**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| C. M. E., as guardian on behalf of minor W.P.B., <br><br> Plaintiff-Appellant, <br><br> v. <br><br> SHORELINE SCHOOL DISTRICT, <br><br> Defendant-Appellee. | No. 21-35538 <br><br> D.C. No. 2:19-cv-02019-RAJ-BAT <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Argued and Submitted February 13, 2023
Seattle, Washington

Before:  W. FLETCHER, PAEZ, and VANDYKE, Circuit Judges.
Concurrence by Judge VANDYKE.

C.M.E. appeals from the district court's judgment affirming the state

administrative law judge's ("ALJ") order granting summary judgment to Shoreline

School District (the "School District") and denying her motion for summary

---

[*]       This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

judgment. C.M.E.'s son, W.P.B., was enrolled in the Shoreline School District until 2019. C.M.E. alleges that her son was denied his right to a free appropriate public education under the Individuals with Disabilities Education Act ("IDEA"). She contends that the School District proposed an initial evaluation that included unnecessary and potentially harmful requirements, specifically an interview and an age appropriate transition assessment.

In 2019, C.M.E. requested that the School District evaluate her son, W.P.B., for special education services under the IDEA. The School District sent C.M.E. a consent form describing the proposed initial evaluation of W.P.B. The proposed evaluation included a review of existing data, an academic evaluation, an age appropriate transition assessment, and an interview. C.M.E. sent back the consent form with handwritten modifications, indicating that she did not consent to the initial evaluation because she objected to both the age appropriate transition assessment and the interview.

In response, the School District initiated a due process hearing seeking to override C.M.E.'s refusal to consent to the proposed initial evaluation. The ALJ found the School District's proposed initial evaluation to be reasonable and ordered an override of C.M.E's refusal to consent. The district court affirmed the ALJ's decision.

We review the "district court's factual findings for clear error, even when they are based on the administrative record." *Anchorage Sch. Dist. v. M.P.*, 689 F.3d 1047, 1053 (9th Cir. 2012) (citing *J.G. v. Douglas Cnty. Sch. Dist.,* 552 F.3d 786, 793 (9th Cir. 2008)). "Questions of law are reviewed de novo, as are mixed questions of law and fact unless the mixed question is primarily factual." *Id.* (citing *N.B. v. Hellgate Elementary Sch. Dist.*, 541 F.3d 1202, 1207 (9th Cir. 2008)).

The School District reasonably included both the age appropriate transition assessment and the interview in its proposed initial evaluation. *See* 34 C.F.R. § 300.300(a)(1)(iii) ("The public agency must make reasonable efforts to obtain the informed consent from the parent for an initial evaluation to determine whether the child is a child with a disability."). The School District was legally required to include an age appropriate transition assessment because W.P.B. was over the age of sixteen. After a student turns sixteen, the IDEA requires that his Individualized Education Program ("IEP") include "appropriate measurable postsecondary goals based upon age appropriate transition assessments." 20 U.S.C. § 1414(d)(1)(A)(i)(VIII). The School District needed to use an age appropriate transition assessment to help develop W.P.B.'s future IEPs if he was found eligible for special education services.

3

The School District also reasonably believed that interviewing W.P.B. "with questions about his interests, strengths, preferences, and needs" was a reasonable manner of determining his postsecondary goals. C.M.E. objected to the interview because W.P.B. had a traumatic experience with a prior interview. In response, the School District asked to review "medical records containing a diagnosis or other information" which would affect W.P.B.'s ability to participate in the interview and the transition assessment. The School District offered to take this "information into consideration to ensure the assessment is done in a manner that is comfortable for [W.P.B.] and results in valid and reliable data." Parent did not respond to the School District's offer. Accordingly, the ALJ did not err in ordering a consent override to allow the School District to proceed with its proposed initial evaluation.

**AFFIRMED.**

4

*C.M.E. v. Shoreline School District*, No. 21-35538

VANDYKE, J., concurring in the judgment:

I agree with the result reached by the majority affirming the district court's denial of C.M.E.'s summary judgment motion. But I would decide this case solely on mootness grounds. The only issue presented in this proceeding—whether the School District could override C.M.E.'s objection to a transition assessment of her son W.P.B.—is now moot. W.P.B. has aged out of eligibility for special education services, and so the School District no longer has any reason to conduct the assessment.

C.M.E. argues the case isn't moot because W.P.B. could still be eligible for a compensatory education. But compensatory education would only be available if W.P.B. was denied a free appropriate public education ("FAPE"). And whether W.P.B. was denied a FAPE was never raised in this proceeding. That issue was litigated by the parties in a separate proceeding, and the ALJ chose not to consolidate the two proceedings. Here, the School District only sought an order overriding C.M.E.'s objection to the assessment.

Assuming arguendo that C.M.E. might have attempted to challenge the denial of a FAPE in this proceeding, she never did so. At the due process hearing, C.M.E. did not raise any claims that could be remedied by compensatory educational services. Our court must only decide the questions before it, not theoretical

1

questions that have not been raised. *See Alvarez v. Smith*, 558 U.S. 87, 93 (2009) (explaining where there "is no longer … any actual controversy about the plaintiffs' particular legal rights," the dispute becomes "abstracted" and "falls outside the scope of the constitutional words 'Cases' and 'Controversies'").

If I were to reach the merits, I would affirm on the basis that C.M.E. rejected not just the interview requested by the School District, but any transition assessment at all—with or without an interview. Whether or not C.M.E. could properly reject the interview was never presented as a standalone issue. The School District made at least some initial attempts to accommodate C.M.E.'s concerns about the interview by asking to consult W.P.B.'s psychologist and arrange for an outside agency to conduct the assessment. C.M.E. flatly refused and did not attempt to reach any agreement with the School District on how the school might obtain a transition assessment agreeable to everyone. Because IDEA clearly requires a transition assessment, 20 U.S.C. § 1414(b)(2)(A), and C.M.E.'s rejection of the assessment prevented the process from moving past the initial review phase, the School District was not required to provide a FAPE.

In short, C.M.E. never agreed to a transition assessment of any sort. The facts here are not such that we can separate C.M.E.'s refusal of the assessment (which is required by IDEA) from C.M.E.'s refusal of an interview (which may not be).

2

Because the interview question never ripened for separate and independent evaluation, I would not reach that question.